IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

KIRK MACKEY,                               )
                                           )
          Plaintiff,                      )
                                           )        CIVIL ACTION
vs.                                        )
                                           )        Case No. 4:26-CV-02469
BRIXMOR HOLDINGS 12 SPE, LLC,              )
                                           )
          Defendant.                      )

## COMPLAINT

COMES NOW, ERIK GARCIA, by and through the undersigned counsel, and files this, his Complaint against Defendant, BRIXMOR HOLDINGS 12 SPE, LLC, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG").   In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.     This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.     Plaintiff, KIRK MACKEY (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3.     Plaintiff is disabled as defined by the ADA.

1

4.    Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

5.    Plaintiff uses a wheelchair for mobility purposes.

6.    Plaintiff is also an independent advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA.  His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property, including returning to the Property within six months after it is accessible ("Advocacy Purposes").

7.    Defendant, BRIXMOR HOLDINGS 12 SPE, LLC (hereinafter "BRIXMOR HOLDINGS 12 SPE, LLC"), is a Delaware limited liability company that transacts business in the State of Texas and within this judicial district.

8.    Defendant, BRIXMOR HOLDINGS 12 SPE, LLC, may be properly served with process for service via its registered agent, to wit:  c/o Corporation Service Company, d/b/a CSC – Lawyers Inco, Registered Agent, 211 E. 7th Street, Suite 620, Austin, TX  78701.

## **FACTUAL ALLEGATIONS**

9.    On or about November 20, 2025, Plaintiff was a customer at "Supermercado El Rancho" a supermarket located at 5502 North Freeway, Houston, TX  77076, referenced herein as "Supermercado El Rancho".  Attached is a receipt documenting Plaintiff's purchase.  *See* Exhibit 1.  Attached is a photograph documenting Plaintiff's visit to the Property.  *See* Exhibit 2.

2

10. Plaintiff's November 20, 2025, visit was his second visit as a customer of the Property.

11. Plaintiff lives less than 8 miles from the Property.

12. Defendant, BRIXMOR HOLDINGS 12 SPE, LLC, is the owner or co-owner of the real property and improvements that Supermercado El Rancho is situated upon and that is the subject of this action, referenced herein as the "Property."

13. Plaintiff's access to the business(es) located 5502 North Freeway, Houston, TX 77076, Harris County Property Appraiser's account number 1265280010001 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant, BRIXMOR HOLDINGS 12 SPE, LLC, is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

14. Defendant, BRIXMOR HOLDINGS 12 SPE, LLC, as property owner, is responsible for complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, BRIXMOR HOLDINGS 12 SPE, LLC, and the tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations. *See* 28 CFR § 36.201(b).

15. Plaintiff has visited the Property twice before as a customer and advocate for the disabled. Plaintiff intends on revisiting the Property within six months after the barriers to

3

access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer, to determine if and when the Property is made accessible and to maintain standing for this lawsuit for Advocacy Purposes.

16.     Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer living in the near vicinity as well as for advocacy purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access. As such, Plaintiff is deterred from returning as a customer until the barriers to access identified in this Complaint are removed.

17.     Although Plaintiff did personally encounter almost every barrier to access identified in Plaintiff's Complaint, Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the complaint in a subsequent visit as, for example, one accessible parking space may not be available and he would need to use an alternative accessible parking space in the future on his subsequent visit.  As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

18.     Plaintiff travelled to the Property as a customer and as an independent advocate for the disabled twice before, encountered the barriers to access the Property that are detailed in this Complaint or were made aware of those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at

4

the Property.

**COUNT I**
**VIOLATIONS OF THE ADA AND ADAAG**

19.    On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq*.

20.    Congress found, among other things, that:

(i)    some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)    discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)    individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)    the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

21.    Congress explicitly stated that the purpose of the ADA was to:

(i)    provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

5

(ii)     provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

* * * * *

(iv)     invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

22.     The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

23.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

24.     The Property is a public accommodation and service establishment.

25.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

26.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq*.; 28 C.F.R. § 36.508(a).

27.     The Property must be, but is not, in compliance with the ADA and ADAAG.

28.     The Property is comprised of multiple buildings served by a single parking lot. All of the buildings on the Property are public accommodations.

29.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property as well as an independent advocate for the disabled,

but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

30.    Plaintiff intends to visit the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

31.    Defendant, BRIXMOR HOLDINGS 12 SPE, LLC, has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

32.    Defendant, BRIXMOR HOLDINGS 12 SPE, LLC, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, BRIXMOR HOLDINGS 12 SPE, LLC, is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

33.    A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

i.    Nearest WSS Food Store, the access aisle to the two accessible parking spaces is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

ii.    Nearest WSS Food Store, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking spaces in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

iii.    Nearest WSS Food Store, there are two accessible parking spaces that are missing identification signs in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

8

iv.    Nearest WSS Food Store, due to a failure to enact a policy of proper parking lot maintenance, there is a buildup of dirt and debris at the base of the accessible ramp. As a result, the ground surfaces at the base of the accessible ramp have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 302, 303 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property as Plaintiff's wheel could get snagged on the vertical rise and cause the wheelchair to tip.

v.    Nearest WSS Food Store, the Property has an accessible ramp that lacks finished edges or edge protection and/or is otherwise in violation of Section 405.9 of the 2010 ADAAG standards. This barrier to access would expose Plaintiff to increased risk of injury for if the wheelchair should fall off the side edge of the ramp, the lack of edge protection would likely cause Plaintiff to tip and incur injury.

vi.    Nearest WSS Food Store, the Property has an accessible ramp leading from the accessible parking space to the accessible entrances with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured.

9

vii. Nearest WSS Food Store, due to a policy of not having parking stops for the parking spaces directly in front of the exterior access route, cars routinely pull up all the way to the curb and the "nose" of the vehicle extends into the access route causing the exterior access route to routinely have clear widths below the minimum thirty-six (36") inch requirement specified by Section 403.5.1 of the 2010 ADAAG Standards. This barrier to access would make it dangerous and difficult for Plaintiff to access exterior public features of the Property as there is not enough clear width for Plaintiff's wheelchair.

viii. Nearest WSS Food Store, due to a policy of not having parking stops for the parking spaces directly in front of the exterior access route, cars routinely pull up all the way to the curb and the "nose" of the vehicle extends into the access route as a result, in violation of Section 502.7 of the 2010 ADAAG Standards, parking spaces are not properly designed so that parked cars and vans cannot obstruct the required clear width of adjacent accessible routes. This barrier to access would make it dangerous and difficult for Plaintiff to access exterior public features of the Property as there is not enough clear width for Plaintiff's wheelchair.

ix. Adjacent to Unit 5416, the accessible parking space contains storm drains with slits that are wider than ½ (one-half) inch in violation of Section 302.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

x.    Adjacent to Unit 5416, due to the presence of a storm drain, the accessible parking space has a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

xi.    Adjacent to Unit 5416, due to the presence of a storm drain, the accessible parking space has a cross-slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to enter and exit the vehicle as a level surface is needed so the wheelchair does not tip over and injure Plaintiff as excessive cross-slopes increase the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

xii.    Adjacent to Unit 5416, the accessible parking space is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

xiii.    Adjacent to Unit 5416, due to a failure to enact a policy of proper parking lot maintenance, the ground surfaces of the access aisle servicing the accessible space has vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 502.4, 302 and 303 of the 2010 ADAAG standards.

11

This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.

xiv. In front of Unit 5407, the access aisle to the two accessible parking spaces is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xv. In front of Unit 5407, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking spaces in violation of Section 406.5 of the 2010 ADAAG Standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

xvi. In front of Unit 5407, the Property has an accessible ramp that lacks finished edges or edge protection and/or is otherwise in violation of Section 405.9 of the 2010 ADAAG standards. This barrier to access would expose Plaintiff to increased risk of injury for if the wheelchair should fall off the side edge of the ramp, the lack of edge protection would likely cause Plaintiff to tip and incur injury.

xvii. In front of Unit 5407, one of the two the accessible parking spaces is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG

standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

xviii. Across the vehicular way from Supermercado El Rancho, due to a policy of placing shopping cart corral in the access aisle, the access aisle is in violation of Section 502.4 of the 2010 ADAAG Standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

xix. Across the vehicular way from Supermercado El Rancho, due to the placement of the shopping cart corral in the access aisle, there lacks adequate space for Plaintiff to utilize the access aisle.  As a result, the Property lacks an accessible route from this accessible parking space to the accessible entrance of the Property in violation of Section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

xx. In front of China King Buffet, the accessible ramp has vertical rises at the base that is in excess of an inch, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access public features of the Property when using this accessible ramp as vertical rises on ramps are particularly dangerous as the surface of the ramp is already at a significant slope which increases the likelihood of the wheelchair to tip over due to the vertical rise.

xxi. In front of Supermercado El Rancho, due to the proximity of the shopping cart corral and an accessible ramp, the walking surfaces of the accessible route have a cross-slope in excess of 1:48, in violation of Section 403.3 of the 2010

ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because excessive cross-slope along accessible routes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

xxii. Inside Supermercado El Rancho, the meat counter has a sales and services counter lacking any portion of the counter that has a maximum height of 36 (thirty-six) inches from the finished floor in violation of Section 904.4 of the 2010 ADAAG standards, all portions of the sales and service counter exceed 36 (thirty-six) inches in height from the finished floor. This barrier to access would make it difficult for Plaintiff to properly transact business at the Property as Plaintiff is in a wheelchair which makes his height much lower than a standing individual, so a surface with a maximum height of 36 inches above the finished floor is necessary for Plaintiff to sign credit card receipts.

xxiii. Inside Supermercado El Rancho, the vertical reach to the meat counter ticket dispenser exceeds the maximum allowable height of 48 (forty-eight) inches above the finish floor or ground in violation of Section 308.3.1 of the ADAAG standards. This barrier to access would make it difficult for Plaintiff to reach the ticket dispenser, preventing Plaintiff from being able to que for service, due to the fact individuals in wheelchairs are seated and have lower reach ranges than individuals who stand.

xxiv. Across the vehicular way from Unit 5540, one of the two accessible parking spaces is missing an identification sign in violation of Section 502.6 of the

2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

xxv.    Across the vehicular way from Unit 5540, one of the two accessible parking spaces does not have a marked access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards. This barrier to access makes it nearly impossible for an individual in a wheelchair to enter and exit their vehicle at this accessible parking space due to the close presence of parked vehicles on either side of the accessible parking space not providing enough room for the wheelchair, this eliminates the accessible route from this accessible parking space.

xxvi.    Across the vehicular way from Unit 5540, the access aisle serving the accessible parking space that has a sign has a width that decreases below 60 inches and is therefore in violation of Section 502.3.1 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

xxvii.    Across the vehicular way from Dollar Tree, due to a failure to enact a policy of proper parking lot maintenance, the ground surfaces of the accessible space has a pothole, vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 502.4, 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.

xxviii.  Across the vehicular way from Hibbetts, due to a policy of placing a security camera system tower in the access aisle, the access aisle is in violation of Section 502.4 of the 2010 ADAAG Standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

xxix.  Across the vehicular way from Hibbetts, the accessible ramp protrudes out into the vehicular way in violation of Section 406.5 of the 2010 ADAAG standards. This barrier to access increases the danger and anxiety for a disabled individual as ramps are often sites of wheelchairs tipping over, especially when it has significant barriers to access such as this one, and having the location of the curb ramp protrude into a vehicular way greatly increases the risk of serious bodily injury and death due to being run over by a vehicle.

xxx.  In front of It's Fashion Metro, the accessible ramp protrudes out into the vehicular way in violation of Section 406.5 of the 2010 ADAAG standards. This barrier to access increases the danger and anxiety for a disabled individual as ramps are often sites of wheelchairs tipping over, especially when it has significant barriers to access such as this one, and having the location of the curb ramp protrude into a vehicular way greatly increases the risk of serious bodily injury and death due to being run over by a vehicle.

xxxi.  In front of It's Fashion Metro, the accessible ramp side flares have a slope in excess of 1:10 in violation of Section 406.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to

access the units of the Property because steep slopes on ramp side flares could cause the wheelchair to tip over and injure Plaintiff.

xxxii.   Across the vehicular way from GameStop, the accessible parking space does not have a marked access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards. This barrier to access makes it nearly impossible for an individual in a wheelchair to enter and exit their vehicle at this accessible parking space due to the close presence of parked vehicles on either side of the accessible parking space not providing enough room for the wheelchair, this eliminates the accessible route from this accessible parking space.

xxxiii.   Across the vehicular way from GameStop, there is an accessible disabled parking space containing a sign indicating the accessible parking space is "Van Accessible," however the dimensions and markings of the accessible parking space do not comply with the van accessible dimensions and markings set forth in Section 502.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

xxxiv.   Across the vehicular way from GameStop, due to the lack of an access aisle, when a vehicle is parked in the accessible parking space and there are cars parked on either side of the accessible parking space, there lacks adequate space for Plaintiff to enter and exit their vehicle.  As a result, the Property lacks an accessible route from this accessible parking space to the accessible entrance of the Property in violation of Section 208.3.1 of the 2010 ADAAG

standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

xxxv.   Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

## SUPERMERCADO EL RANCHO RESTROOMS

xxxvi.   The accessible toilet stall door is not self-closing and violates Section 604.8.1.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to safely and privately utilize the restroom facilities.

xxxvii.   Due to the presence of a bar, the restrooms have a sink with inadequate knee and toe clearance in violation of Section 306 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom sink as Plaintiff is seated in a wheelchair and, when seated, Plaintiff's feet and legs protrude out in front.  In order to properly utilize a sink, Plaintiff's legs must be able to be underneath the surface of the sink, but due to the improper configuration of the sink, there is no room underneath for Plaintiff's legs and feet.

xxxviii.   The actionable mechanism of the paper towel dispenser in the restroom is located outside the maximum prescribed vertical reach range of 48 inches above the finished floor as set forth in Section 308.2.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to reach the actionable mechanism of the paper towel dispenser as individuals in wheelchairs are seated and have significantly less

18

reach range than individuals who stand up.

xxxix. There is a policy of placing the trash can next to the restroom door. As a result, the restroom door lacks a clear minimum maneuvering clearance, due to the proximity of the door hardware within 18 inches to the adjacent trash can, in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom due to the fact individuals in wheelchairs have their feet sticking out in front of them and when there is inadequate clearance near the door (less than 18 inches), their protruding feet block their ability to reach the door hardware to open the door.

34. The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

35. Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

36. According to the Harris County Property Appraiser website, the Property was originally built in 1960, but in 2014, the Property underwent significant construction altering the Property. As such, the "effective year built" for this Property is 2014, and therefore removal of the barriers to access identified in this Complaint should be regulated under the 2010 ADAG Standards, not the readily achievable standard.

37. The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

38.    Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

39.    Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, BRIXMOR HOLDINGS 12 SPE, LLC, has the financial resources to make the necessary modifications.  According to the Property Appraiser, the Appraised value of the Property is $25,556,330.00.

40.    The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction from the IRS for spending money on accessibility modifications.

41.    Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, BRIXMOR HOLDINGS 12 SPE, LLC, is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

42.    Plaintiff's requested relief serves the public interest.

43.    The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, BRIXMOR HOLDINGS 12 SPE, LLC.

44.    Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, BRIXMOR HOLDINGS 12 SPE, LLC, pursuant to 42 U.S.C. §§ 12188 and 12205.

20

45. Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, BRIXMOR HOLDINGS 12 SPE, LLC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a) That the Court find Defendant, BRIXMOR HOLDINGS 12 SPE, LLC, in violation of the ADA and ADAAG;

(b) That the Court issue a permanent injunction enjoining Defendant, BRIXMOR HOLDINGS 12 SPE, LLC, from continuing their discriminatory practices;

(c) That the Court issue an Order requiring Defendant, BRIXMOR HOLDINGS 12 SPE, LLC, to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d) That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e) That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: March 27, 2026.

Respectfully submitted,

/s/ Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com

21